UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ELITE WIRELESS GROUP, INC.,<br><br>Defendant. | No.  2:19-cv-02187-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

This case arises out from a determination by Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission") of reasonable cause that Defendant Elite Wireless Group, Inc. ("Elite" or "Defendant") had discriminated against a former employee of Elite's because of her sex in contravention of Title VII of the Civil Rights Act of 1964, 28 U.S.C. §§ 2000, et seq., as amended ("Title VII").  Following that determination, the EEOC instituted the present lawsuit on October 29, 2019.

Defendant now moves for summary judgment on grounds that the EEOC, by failing to initiate any discovery since Elite's answer to the complaint was filed on October 14, 2020, has failed to present evidence to support its claim and Elite is accordingly entitled to judgment as a matter of law pursuant to Federal Rule of Civil

///

Procedure 56.[1]  Alternatively, Elite requests that the EEOC's lawsuit be dismissed for failure to prosecute under Rule 41(a) on grounds that the EEOC has done nothing to pursue the case since it was commenced.  As set forth below, Defendant's Motion (ECF No. 20) is DENIED.[2]

**BACKGROUND**

According to the EEOC's Complaint, after a female former employee ("Employee")[3] accused Elite of sex discrimination, it investigated the charges and, by letter to Elite dated August 12, 2019, issued a Determination finding reasonable cause that they were substantiated.  Compl., ECF No. 1, ¶¶ 6, 7.  The Commission's investigation allegedly revealed, as delineated in its Complaint, that after the Employee was hired by Elite and assigned to work as a sales clerk at its Sacramento Arden Fair Mall store ("Store") in March of 2017, the store manager at that location (who was also the Employee's direct supervisor[4]) began to make unwanted comments that he wanted to "hang out" and "hook up" with her.  Id. at ¶ 19.  Although the Employee complained to the District Sales Manager (tasked with additional oversight over the Store) about the comments, he told her that the store manager was "probably just joking" and "not being serious."  Id. at ¶ 20.

Following a company holiday party on November 17, 2017, however, the manager sexually assaulted the Employee in a hotel room once other employees who had continued to drink and celebrate there had departed.  Id. at ¶¶ 21-24.  Although the

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

[3] This anonymous designation will be used throughout the following Memorandum and Order given the Court's Order of May 17, 2021, which granted the EEOC's request not to identify the Employee by name given the underlying sexual assault allegations made herein.

[4] Employee's Decl., ECF No. 22-4, ¶ 5.

1  Employee both reported the incident to the police and to Elite's CEO, the Employee had
2  to continue working in the Arden Fair store for several days until she (but not the
3  manager) was transferred to a less desirable store with a longer commute. Id. at ¶ 27-
4  29.

5      Emotionally and psychologically traumatized by the assault, the Employee's work
6  attendance began to suffer despite her alleged exemplary job performance beforehand.
7  Id. at ¶¶ 16, 30. After being informed by Elite in December of 2017 that there was no
8  evidence to support her claims, the Employee was terminated soon thereafter for
9  excessive absenteeism. Id. at ¶¶ 31-32.

10     Although defense counsel herein (who had also represented Elite in the
11 investigation process and during pre-filing settlement negotiations) indicated in early
12 February of 2020 that he would be filing an answer to the EEOC's lawsuit once admitted
13 to the Eastern District, counsel's failure to do so or to even request an extension
14 ultimately forced the EEOC to move for a default, which was entered by the Court of
15 March 10, 2020. Pl.'s Separate Statement of Disputed Fact in Opposition ("PDF"), ECF
16 Nos. 22-1, 27, 36.[5] Thereafter, while Defendant's counsel failed to move to set aside the
17 default, he did tell the EEOC in May of 2020 that Elite had closed its business and
18 renewed a prior offer to settle the case. Id. at No. 44. Although the Commission asked
19 for corroborating evidence to support Defendant's representations, it denies ever
20 agreeing to set aside the default in exchange for such information (id. at Nos. 46-47) and
21 Elite did not move to set aside the default until August 14, 2020, more than five months
22 after it had been entered. It was not until October 14, 2020, after the Court granted its
23 Motion to Set Aside, that Defendant finally filed its answer to the EEOC's complaint.
24 ECF No. 16.

25     By this time, more than a year had passed since the EEOC had filed its initial
26 complaint on September 23, 2019. Counsel for the Commission claim they initially

27
28     [5] Defendant failed to file any response controverting the allegations contained in the Commission's PDF.

3

1  believed because of that delay that the Court would simply issue a new Initial Pretrial
2  Scheduling Order.  PDF, No. 51.  Upon further consideration, however, counsel
3  determined that would not necessarily occur and EEOC attorney Debra Smith sent
4  Elite's attorneys, Steven Roeser and Jim Burns, a letter dated March 4, 2021 which
5  proposed a detailed agenda for a meet and confer meeting pursuant to Rules 16 and
6  26(f), as well as Local Rule 240, to address both a discovery plan and a protocol for
7  approaching electronically stored information ("ESI").  Id. at Nos. 53, 54.  Ms. Smith
8  proposed meeting on either March 14, 2021, or the following week.  Id. at No. 54.
9  Neither Mr. Roeser or Ms. Smith even bothered to respond, instead simply filing the
10 motion for summary judgment, or alternatively, for dismissal given a failure to prosecute,
11 on April 5, 2021.  Id. at Nos. 55-56.   That is the motion now before the Court for
12 consideration.
13       Counsel for Elite refused to withdraw their motion when asked to do so, and only
14 on April 12, 2021, did counsel finally offer to meet with the EEOC in response to
15 counsel's request more than a month beforehand.  However, the date defense counsel
16 suggested, May 14, 2021, was some two months after the dates initially proposed by the
17 EEOC as enumerated above.  Id. at Nos. 57-58.
18       In moving for summary judgment, Defendant blames the EEOC for having
19 engaged in no discovery that would have produced evidence to support the allegations
20 of their complaint, arguing that in the absence of any evidence the Commission cannot
21 oppose summary judgment by merely resting upon the allegations of its Complaint.
22 Despite the relatively specific allegations contained in the EEOC's Complaint as
23 delineated above, Elite inexplicably characterizes those allegations as "conclusory" and
24 insufficient to support the existence of a disputed fact.  Def.s' Mot., ECF No. 20, 4:11-14.
25 Perhaps even more surprisingly, Defendant moved for summary judgment, arguing the
26 absence of any corroborating evidence, at a point (April. 6, 2021) when fact discovery
27 was not scheduled to close until more than six months later, on or about October 14,
28 ///

2021.[6] Finally, Elite's alternative request for dismissal given the EEOC's alleged failure to prosecute appears to ignore the fact, as the above-described events make clear, that most of the delay in propelling the case forwarded was attributable to Defendant rather than to the Commission.

## STANDARD

### A. Motion for Summary Judgment

The Federal Rule of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party

---

[6] The operative Initial Pretrial Scheduling Order (ECF No. 4) provided for fact discovery to close 365 days following the filing of the last answer, which as indicated above here occurred on October 14, 2020.

5

cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

### B. Dismissal for Failure to Prosecute

Under Rule 41(b), "[if] the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Rule 41(b) requires that plaintiffs prosecute their claims with "reasonable diligence" to

6

avoid dismissal. Anderson v. Air West, Inc., 542 F.2d 522, 524 (9th Cir. 1976).[7] "A Rule 41(b) dismissal 'must be supported by a showing of unreasonable delay.'" Omstead v. Dell, Inc., 594 F.3d 1081, 1084 (9th Cir. 2010) (quoting Henderson v Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986). "[O]nly **unreasonable** delay will support a dismissal for lack of prosecution." Nealey v. Transportacion Maritima Mexicana, S.A., 662 F.2d 1275, 1280 (9th Cir. 1980) (emphasis added). "The pertinent question. . . is not simply whether there has been **any**, but rather whether there has been **sufficient** delay or prejudice to justify a dismissal of the plaintiff's case." Id. (emphasis added). Moreover, to the extent that delay has been occasioned by "what appears to be a good faith error rather than any willful failure to prosecute", dismissal for delay in prosecution is not indicated. Cox v. County of Yuba, No. 2:09-cv-01894-MCE-JFM, 2011 WL 590733 at * 5 (E.D. Cal. Feb. 10, 2011). Carefully circumscribing the propriety of dismissal in the face of dismissal is necessary since dismissal under Rule 41(b) has been deemed "so harsh a penalty it should be imposed as a sanction only in extreme circumstances." Lal v. California, 610 F.3d 518, 525 (9th Cir. 2010) (quoting Dahl v. City of Huntington Beach, 84 F.3d 363, 366 (9th Cir. 1996)). In determining whether there have been such extreme circumstances which merit the harsh sanction of dismissal, courts must consider: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and 5) the availability of less drastic alternatives. Yourish v. California Amplifier, 191 F.3d 983, 990 (9th Cir. 1999). The burden of establishing the propriety of dismissal upon consideration of these factors rests with the defendant. Williams v. Grant County, No. 2:15-cv-01760 SU, 2017 WL 1334726 at * 3 (D. Or. 2017). Whether to dismiss an action under Rule 41(b) is a matter soundly within the Court's discretion. See Ash v. Cvetkov, 739 F.2d 493, 495 (9th Cir. 1984).

---

[7] Similarly. E.D. Local Rule 280(a) requires that counsel "shall proceed with reasonable diligence to take all steps necessary to bring an action to issue and readiness for pretrial conference and trial."

## ANALYSIS

Elite's motion for summary judgment fails without even having to determine whether the EEOC was dilatory in proceeding with discovery. This is because, as the EEOC aptly points out, a plaintiff alleging employment discrimination "need produce very little evidence in order to overcome an employer's motion for summary judgment." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008). As Davis also states, the Ninth Circuit has "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." Id.

Here, Elite claims it is entitled to summary judgment solely on grounds that the EEOC has failed to produce evidence, beyond its pleadings, that any actionable discrimination occurred. By presenting no evidence of its own to demonstrate that the EEOC's claims have no basis, however, Elite permits the EEOC to overcome its motion by simply producing material facts sufficient to support a prima facie case of discrimination on the basis of sex; namely, that the Employee was subjected to verbal or physical conduct of a sexual nature, that the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment. Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1055 (9th Cir. 2007) (citing Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995).

The Employee's Declaration (ECF No. 22-4) easily satisfies that requirement, which Elite had to know was a foregone conclusion given its participation in the EEOC's lengthy investigation and the fact that the Employee's key allegations are already contained in the EEOC Complaint. The Declaration nonetheless removes even any esoteric doubt on this issue. The Employee claims she was just eighteen years of age when hired by Elite, and had just turned nineteen when Elite transferred, in July of 2019, a new Store Manager, Randy Dela Cruz, to the Arden Fair Mall store where she worked.

1  Accordingly, Mr. Dela Cruz, a married man in his thirties, became her immediate
2  supervisor.  Employee Decl., ¶¶ 3-5.
3  　　　　Despite Mr. Dela Cruz's status as her boss and the age differential between them,
4  by October of 2017 the Employee claims he began making unwanted comments to her
5  of a sexual nature once or twice per shift when they worked together, which was typically
6  several times a week.  Those comments included statements to the effect that "we
7  should hang out", "we should hook up", "you should send me pictures", "I want to touch
8  you", "let's get a hotel together", "we should get a hotel and hook up", and "let's have a
9  one-night stand." Id. at ¶ 6.  The Employee tried to reject these suggestions, but
10 Dela Cruz's comments continued, causing her to complain to Edwin Pawley, Elite's
11 District Sales Manager, who she understood to be Mr. Dela Cruz's boss. Id. at ¶¶ 7-8.
12 The Employee claims that Mr. Pawley simply "laugh[ed] if off, telling [her] that
13 Mr. Dela Cruz was probably just joking and not being serious." Id. at ¶ 8.
14 　　　　The Employee's Declaration indicates that Mr. Dela Cruz's conduct nonetheless
15 soon moved from even beyond these unwanted sexual comments.  On November 17,
16 2017, two days before Elite's upcoming holiday party, the Employee claims that when
17 she told him she planned to shop in the Arden Fair Mall for something to wear to the
18 event, Dela Cruz insisted on accompanying her.  After suddenly telling the Employee he
19 wanted to slap her buttocks, and despite being asked by the Employee not to do so,
20 Mr. Dela Cruz went ahead anyway.  When the Employee immediately confronted him,
21 questioning why he thought it was okay to touch her, he said "he couldn't help himself."
22 Id. at ¶ 9.
23 　　　　Then, after the company holiday party held on November 19, 2021 ended,
24 Mr. Dela Cruz invited staff back to a room he had rented, where, according to the
25 Employee, the group continued drinking and celebrating.  When, at about 12:30 a.m.,
26 her coworkers began leaving, the Employee states she texted her boyfriend for a ride
27 home, but ended up being the sole employee remaining before he arrived.  At that point,
28 according to the Employee, Mr. Dela Cruz grabbed her by the arms and started kissing

9

1   her mouth and neck.  Although she tried to resist, he pushed her onto the bed.  Despite
2   trying to leave and telling Dela Cruz to stop, the Employee states he was able to pull her
3   pants down and expose her genitals.  The employee states that Dela Cruz then kissed
4   and licked her pelvic area.  When she eventually was able to get up and run to the door,
5   Dela Cruz grabbed her again but backed off when she began to scream.  Id. at ¶¶ 10-12.

6         The Employee states that she not only filed a criminal report with the Rocklin Police Department the next morning, she also called Elite's CEO, Edguardo Melgar to report the assault and thereafter followed up with an email informing Melgar that she had filed a police report.  Nonetheless, despite her ongoing emotional and psychological trauma as a result of Dela Cruz's attack, Melgar refused to immediately separate Mr. Dela Cruz from her work environment, stating that he could not transfer him given his status as the store manager.  Id. at ¶¶ 13-15.

        The additional details provided by the Employee's declaration easily surmount the relatively low evidentiary bar needed to overcome Elite's summary judgment motion, particularly since physical assault involving an intimate bodily part, as alleged by the Employee, "constitutes one of the most severe forms of sexual harassment' (see Worth v. Tyer, 276 F.3d 249, 268 (7th Cir. 2001), not to mention the pervasive oral commentary to which the Employee was subjected.  The Court is troubled, to say the least, by the likelihood, given the Commission's prior investigation in which Defendant participated, that Elite knew of these additional evidentiary details yet proceeded with its motion for summary judgment anyway.  Elite's request for summary judgment is utterly without merit and is thus DENIED.

        Defendant's alternative request that the EEOC Complaint be dismissed for failure to prosecute fares no better.  The Commission's unrebutted evidence indicates that defense counsel claimed they would respond to the Complaint, yet failed to do so, thereby necessitating an entry of default against Elite.  While Defendant tries to fault the EEOC for not reducing the default to judgment, the fact remains that it was Elite who failed to request that the default be set aside until August 14, 2020, more than five

months after it had been entered.  Then, once Defendant successfully set aside the judgment, it was the Commission and not Defendant[8] that requested a scheduling conference on March 4, 2021 so that discovery matters could be addressed once an answer had been filed.  Rather than respond to that request, Elite simply filed the present motion.  As has already been made clear, that motion is predicated on the notion that the EEOC was not diligent in proceeding with discovery despite the fact that it was the default proceedings necessitated by Defendant's failure to timely respond that led to the majority of the delay, and even more significantly despite the fact that over six months remained before the discovery deadline concluded in any event.

No matter how characterized, Defendant's request for dismissal for failure to prosecute is woefully inadequate.  A Rule 41(b) motion must be supported by a showing of unreasonable delay by the moving party, and here no such showing has been made.  Omstead v. Dell, Inc., 594 F.3d 1081, 1084 (9th Cir. 2010).  Elite's Motion therefore fails on its face without even applying the balancing test identified by the case law, which is triggered by only by delay under extreme circumstances which potentially merits the harsh remedy of dismissal.  See Lal v. California, 610 F.3d at 525; Yourish v. California Amplifier, 191 F.3d at 990.

## CONCLUSION

This Court having to consider this baseless motion wasted everyone's time and this district's limited judicial resources.  Defense counsel is admonished that the Court will not look kindly on future motions of this sort, motions that have no basis in the law and no support in the record.  Any future such filings will result in the imposition of

///

///

---

[8] Between October 15, 2020 and April 5, 2021, a period of almost five months, Defendant made no effort to contact the EEOC whatsoever.  Decl. of Debra A. Smith., ECF No. 22-3, ¶ 39.

sanctions. For all the reasons set forth above, Elite's Motion for Summary Judgment, or alternatively for dismissal for failure to prosecute (ECF No. 20), is DENIED.

IT IS SO ORDERED.

Dated: January 27, 2022

_____
MORRISON C. ENGLAND, JR.
SENIOR UNITED STATES DISTRICT JUDGE