ROBERTA STEELE, SBN 188198 (CA)
MARCIA L. MITCHELL, SBN 18122 (WA)
JAMES H. BAKER, SBN 291836 (CA)
MARIKO ASHLEY, SBN 311897 (CA)
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
San Francisco District Office
450 Golden Gate Ave., 5th Floor West
P.O. Box 36025
San Francisco, CA  94102
Telephone No. (650) 684-0950
Fax No. (415) 522-3425
james.baker@eeoc.gov

*Attorneys for Plaintiff EEOC*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ELITE WIRELESS GROUP, INC., and WIRELESS WORLD LLC d/b/a EXPERTS CHOICE,<br><br>Defendants. | Case No.:  2:19-cv-02187-MCE-CKD<br><br>**FIRST AMENDED COMPLAINT**<br><br>**Civil Rights – Employment Discrimination**<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, as amended, to correct unlawful employment practices on the basis of sex, and to provide appropriate relief to a former female employee (Charging Party) who was adversely affected by such practices and filed a Charge of Discrimination, No. 555-2018-00367. The U.S. Equal Employment Opportunity Commission (EEOC or Commission) alleges that Defendant Elite Wireless Group, Inc. (Elite) subjected Charging Party to unlawful discrimination based on her sex.

Plaintiff EEOC also brings this action against Defendant Wireless World LLC d/b/a Experts Choice (Wireless), which became the successor entity to Elite on or around March 1, 2020. Plaintiff EEOC adds Wireless as successor and necessary party to this lawsuit pursuant to Fed. R. Civ. P. 19(a)(1)(A), Fed. R. Civ. P. 15, and Fed. R. Civ. P. 65(d) in order to secure appropriate monetary and injunctive relief.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) (Title VII); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981(a).

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of California.

## PARTIES

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times until at least March 1, 2020, Defendant Elite Wireless Group, Inc. was a California corporation doing business in the state of California and continuously had at least 15 employees.

5. At all relevant times until at least March 1, 2020, Elite was continuously an employer selling cellular plans, mobile phones, and related electronic devices, and engaged in an industry affecting commerce under Sections 701 (b), (g) and (h) of Title VII, 42 U.S.C. § 2000e (b), (g) and (h).

6. On or around March 1, 2020, Defendant Wireless World LLC d/b/a Experts Choice executed an asset purchase agreement with Elite (Purchase Agreement) through which Wireless acquired virtually all of Elite's goodwill, property, and liabilities, including accounts payable, assets, including bank accounts, inventory, and leases, as well as Elite's business records related to Elite's

former business operations.

7. On or around March 1, 2020, Wireless also acquired Elite's ownership of and legal interests in virtually all of the transferable authorizations, licenses, and contracts related to Elite's former business operations.

8. Elite ceased all operations following the sale of the business in or around March 2020. Although the corporation has not been dissolved, Elite is presently suspended by the California Secretary of State.

9. As of March 1, 2020, Wireless operated stores at many of the same business addresses and locations as Elite operated before executing the Purchase Agreement.

10. Through the Purchase Agreement, Wireless retained the right to hire all of Elite's former employees and Elite agreed not to solicit its former employees from Wireless. Wireless continued to staff some of Elite's former locations with Elite's former employees.

11. After purchasing Elite's business, Wireless hired Elite's shareholders as consultants.

12. Since at least March 1, 2020, Wireless has sold substantially the same cellular plans, mobile phones, related electronic devices, and other products as Elite.

13. At the time it acquired Elite's assets, property, and personnel, Wireless had actual notice of this lawsuit and/or the underlying Charge of Discrimination filed with the EEOC.

14. Since at least March 1, 2020, Wireless was a Nevada limited liability company doing business in the state of California and continuously had at least 15 employees.

15. Since at least March 1, 2020, Wireless has continuously been an employer selling cellular plans, mobile phones, and related electronic devices, and engaged in an industry affecting commerce under Sections 701 (b), (g) and (h) of Title VII, 42 U.S.C. § 2000e (b), (g) and (h).

16. Since at least 2020, Elite has been deprived of the assets and operative control necessary to provide full relief in this lawsuit.

17. Wireless is liable in this matter under the principles of successor liability.

## ADMINISTRATIVE PROCEDURES

18. More than thirty (30) days prior to the institution of this lawsuit, Charging Party filed

a charge with the EEOC alleging that Elite discriminated against her in violation of Title VII on the basis of her sex.

19. By letter dated August 19, 2019, the Commission issued to Elite a Determination finding reasonable cause to believe that Elite violated Title VII.

20. On August 19, 2019, the Commission invited Elite to join with the EEOC in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

21. The Commission communicated with Elite to provide Elite an opportunity to remedy the discriminatory practices described in its Determination letter.

22. The Commission was unable to secure from Elite a conciliation agreement acceptable to the Commission.

23. By letter dated September 13, 2019, the Commission issued to Elite a notice that efforts to conciliate were unsuccessful and that further conciliation efforts would be futile or non-productive.

## **STATEMENT OF CLAIMS**

24. Since about October 2017, Defendants have engaged in unlawful practices of sex discrimination in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1) by subjecting Charging Party to harassment.

25. Elite hired the then-teenage Charging Party as a sales clerk in its Arden Fair Mall store in March 2017.

26. On or about July 16, 2017, Elite transferred a new Store Manager, who was in his thirties, to the Arden Fair Mall store where he directly supervised Charging Party.

27. In September 2017, Elite awarded Charging Party "Employee of the Month." Charging Party was consistently a high performer.

28. In October 2017, Elite's new Store Manager began making unwanted, sexual comments to Charging Party once or twice per day, at least four days a week, at the Arden Fair Mall store when they worked the same shifts.

29. Elite's new Store Manager also sent Charging Party a Facebook "friend" request and tried to add her to his Instagram and Snapchat accounts.

30. In early November, Charging Party verbally reported to Elite's District Sales Manager, who oversaw the Arden Fair Mall store, that its new Store Manager was acting weird and saying weird things to her, such as asking her to hang out and to hook up with him.

31. Elite's District Sales Manager disregarded the teenaged Charging Party's complaint by laughing it off, stating that the Store Manager was probably just joking and not being serious.

32. On or about November 19, 2017, Elite held its holiday party which Charging Party, the Store Manager, and other staff members attended. Everyone was drinking and celebrating the staff's accomplishments for the year.

33. After the party ended, Elite's Store Manager invited staff back to a hotel room he rented, where everyone continued drinking and celebrating.

34. Charging Party's co-workers began leaving Elite's Store Manager's hotel room about a half hour past midnight. Charging Party texted her boyfriend for a ride home. The last of her co-workers left the hotel room before Charging Party's boyfriend arrived to pick her up.

35. As soon as they were alone, Elite's Store Manager sexually assaulted Charging Party.

36. Charging Party continued fighting off her Store Manager's assault until she could escape. With her Store Manager in close pursuit, Charging Party ran out of the hotel and into the parking lot where her boyfriend was waiting.

37. Charging Party went to the Police Department the next morning to file a criminal report. The medical examiner found five bruises on her body.

38. Charging Party called Elite's CEO to report the assault right after she left the Police Department. The following day, November 21, 2017, she emailed him again to report that she had filed a criminal report with the Police Department.

39. As a result of the physical and emotional toll the assault wreaked upon her, Charging Party requested, but was denied, leave. As a result, she was forced to work the next few days at the

Arden Fair Mall store.

40. Despite Charging Party's report that her Store Manager had assaulted her, Elite did not immediately separate the Store Manager from Charging Party. Instead, Elite told her that it could not transfer her attacker because he was the Store Manager, which was also its explanation, later, for transferring Charging Party to its store in Woodland, California, which was 45-miles from her home, increasing both the time and expense of her commute.

41. Elite transferred Charging Party to the Woodland store on or about the third week of November 2017. Emotionally and psychologically traumatized by the assault, Charging Party was tardy and absent at times in December 2017. The Store Manager at the Woodland store gave Charging Party verbal and written warnings during December 2017 for attendance.

42. On or about December 21, 2017, Elite's CEO and its District Sales Manager visited the Woodland store and informed Charging Party that its Human Resources Manager had investigated her sex harassment complaint but found no evidence to corroborate her allegations.

43. On December 26, 2017, Elite's Woodland Store Manager gave Charging Party a final written warning for four tardies and four absences during the month, including a No Call/No Show on December 24. On December 29, Elite disciplined Charging Party for clocking in 17 minutes late and fired her, citing repeated violations of the company's attendance policy.

44. The effects of the practices complained of in paragraphs 25 - 43 have been to deprive Charging Party of equal employment opportunities and, otherwise, adversely affect her status as an employee because of her sex.

45. The unlawful employment practices complained of in paragraphs 25 - 43 above were intentional and were carried out with malice and/or reckless indifference to the federally protected rights of Charging Party.

46. The effects of the practices complained of in paragraphs 25 - 43 have been to inflict emotional pain, suffering and inconvenience upon Charging Party.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully request that this Court:

A. Grant a permanent injunction enjoining Defendants, and their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in sex discrimination against employees, and engaging in any other employment practices that discriminate on the basis of sex.

B. Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees, and that eradicate the effects of their past and present unlawful employment practices.

C. Order Defendants to make whole Charging Party, who was adversely affected by Defendants' discriminatory conduct, by providing appropriate back pay, lost benefits, and prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to reinstatement or front pay.

D. Order Defendants to make whole Charging Party by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job search expenses and medical expenses, in amounts to be determined at trial.

E. Order Defendants to make whole Charging Party by providing compensation for non-pecuniary losses resulting from the unlawful employment practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendants to pay Charging Party punitive damages for their malicious and reckless conduct described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper.

H. Award the Commission its costs in this action.

# JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its First Amended Complaint.

Respectfully submitted,

DATED this First day of March, 2023.

By: _/s/ James H. Baker_

| | |
|---|---|
| ROBERTA L. STEELE<br>Regional Attorney | CHRISTOPHER LAGE<br>Deputy General Counsel |
| MARCIA L. MITCHELL<br>Supervisory Trial Attorney | GWENDOLYN YOUNG REAMS<br>Associate General Counsel |
| JAMES H. BAKER<br>Senior Trial Attorney | Office of the General Counsel<br>131 "M" Street NE<br>Washington, D.C. 20507 |
| MARIKO ASHLEY<br>Trial Attorney | |

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
San Francisco District Office
450 Golden Gate Ave., 5th Floor West
P.O. Box 36025
San Francisco, CA 94102

*Attorneys for Plaintiff EEOC*