ROBERTA STEELE, SBN 188198 (CA)
MARCIA L. MITCHELL, SBN 18122 (WA)
JAMES H. BAKER, SBN 291836 (CA)
MARIKO M. ASHLEY, SBN 311897 (CA)
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
San Francisco District Office
450 Golden Gate Ave., 5th Floor West
P.O. Box 36025
San Francisco, CA  94102
Telephone No. (650) 684-0943
Fax No. (415) 522-3425
Mariko.Ashley@eeoc.gov

*Attorneys for Plaintiff EEOC*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ELITE WIRELESS GROUP, INC., and WIRELESS WORLD LLC d/b/a EXPERTS CHOICE,<br><br>Defendants. | Case No.:  2:19-cv-02187-MCE-CKD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF EEOC'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT ELITE WIRELESS GROUP, INC.**<br><br>Hearing Date: December 20, 2023<br>Time: 10:00 a.m.<br>Courtroom 24, 8th Floor<br>Magistrate Judge Carolyn K. Delaney |

## **TABLE OF CONTENTS**

I.    Introduction ........................................................................................................... 1

II.   Procedural History ................................................................................................ 2

III.  Statement of Facts ............................................................................................... 3

    A.    Store Manager Dela Cruz Sexually Harasses 19-Year-Old
    Charging Party .......................................................................................... 3

    B.    Dela Cruz Sexually Assaults Charging Party at Elite's
    Holiday Party ............................................................................................ 3

    C.    Elite Terminates Charging Party ............................................................... 4

    D.    Charging Party's Emotional Distress ......................................................... 5

IV.   Legal Analysis .................................................................................................... 6

    A.    The EEOC is Entitled to Default Judgment Against Elite ........................ 6

        1.    Prejudice to EEOC and Charging Party ........................................ 6

        2.    The Merits of EEOC's Substantive Claims and Sufficiency
        of the FAC .................................................................................... 7

        3.    The Amount of Money At Stake .................................................... 9

        4.    Elite Cannot Show Excusable Neglect ........................................ 10

        5.    Public Policy Will Not Be Harmed By Default Judgment ............ 10

    B.    Damages ................................................................................................. 11

        1.    The EEOC's Requested Damages Are Reasonable
        Under Title VII and Satisfy Rule 54(c) ........................................ 11

        2.    Backpay With Prejudgment Interest ............................................ 12

        3.    Compensatory Damages .............................................................. 12

        4.    Punitive Damages Are Appropriate ............................................. 14

        5.    Injunctive Relief ......................................................................... 15

V.    CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Action S.A. v. Marc Rich & Co.*,
951 F.2d 504 (2d Cir. 1991) ................................................................................... 13

*Adolph Coors Co. v. Movement Against Racism & Klan*,
777 F.2d 1538 (11th Cir. 1985) .............................................................................. 13

*Allain v. Miller*,
No. CV 22-03131, 2023 WL 6520490 (E.D. Pa. Oct. 5, 2023) ............................... 14

*Bd. of Trustees of IBEW Loc. Union No. 100 Pension Tr. Fund v. Porges*,
No. 1:11-CV-02048-LJO, 2013 WL 4012009 (E.D. Cal. Aug. 6, 2013) ................. 10

*Caudle v. Bristow Optical Co.*,
224 F.3d 1014 (9th Cir. 2000) ................................................................................ 12

*Chalmers v. City of Los Angeles*,
762 F.2d 753 (9th Cir. 1985) .................................................................................. 13

*Cnty. of Los Angeles v. Davis*,
440 U.S. 625 (1979) ................................................................................................ 15

*Delgado v. Dempsey's Adult Care Homes, LLC*,
No. 22-15176, 2023 WL 3034263 (9th Cir. Apr. 21, 2023) .................................... 17

*EEOC v. Goodyear Aerospace Corp.*,
813 F.2d 1539 (9th Cir. 1987) ................................................................................ 15

*E.E.O.C. v. MacMillan Bloedel Containers, Inc.*,
503 F.2d 1086 (6th Cir. 1974) ................................................................................ 16

*E.E.O.C. v. Pac. Fun Enterprises LLC*,
No. CV 17-00482, 2020 WL 406681 (D. Haw. Jan. 7, 2020) ................................... 9

*E.E.O.C. v. Sunfire Glass, Inc.*,
No. CV-08-1784-PHX-LOA, 2009 WL 976495
(D. Ariz. Apr. 10, 2009) ................................................................................... 10, 14

*E.E.O.C. v. Trimbco, Inc.*,
No. 06-6141 PVT, 2009 WL 733888 (N.D. Cal. Mar. 17, 2009) ......................... 7, 14

*E.E.O.C. v. Zoria Farms, Inc.*,
No. 113CV01544DADSKO, 2016 WL 8677142
(E.D. Cal. May 13, 2016) ............................................................................. 6, 7, 11, 14

*Edwards v. Occidental Chemical Corp.*,
892 F.2d 1442 (9th Cir. 1990) ................................................................................ 12

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) .......................................................................... 6, 7, 9

*Emp. Painters' Tr. v. Ethan Enterprises, Inc.*,
   480 F.3d 993 (9th Cir. 2007) ............................................................................. 10

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998) ......................................................................................... 8

*Farsakian v. Kent*,
   No. CV-20-00141-PHX-MTL, 2020 WL 6363729
   (D. Ariz. Oct. 29, 2020) ........................................................................... 7, 8, 9

*Franks v. Bowman Transportation Co.*,
   424 U.S. 747 (1976) ......................................................................................... 11

*Fuller v. Idaho Dep't of Corr.*,
   865 F.3d 1154 (9th Cir. 2017) ......................................................................... 8

*Geddes v. United Fin. Grp.*,
   559 F.2d 557 (9th Cir. 1977) ........................................................................... 13

*Goodson v. Cnty. of Plumas*,
   No. 2:18-CV-03105-KJM-DB, 2023 WL 4678990
   (E.D. Cal. July 21, 2023) ................................................................................. 13

*Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp.*,
   973 F.2d 155 (2d Cir. 1992) ............................................................................. 8

*Henry v. Sneiders*,
   490 F.2d 315 (9th Cir. 1974) ........................................................................... 11

*Inda v. United Air Lines, Inc.*,
   565 F.2d 554 (9th Cir. 1977) ........................................................................... 12

*J & J Sports Prods., Inc. v. Concepcion*,
   No. C 10-05092 WHA, 2011 WL 2220101
   (N.D. Cal. June 7, 2011) ................................................................................. 11

*Johnson v. Patel*,
   No. 215CV02298MCEEFB, 2017 WL 999462
   (E.D. Cal. Mar. 15, 2017) ......................................................................... 6, 7, 11

*Kolstad v. American Dental Assoc.*,
   527 U.S. 526 (1999) ......................................................................................... 14

*Kraszewski v. State Farm General Ins. Co.*,
   912 F.2d 1182 (9th Cir. 1990) ......................................................................... 12

*Odima v. Westin Tuscan Hotel*,
   53 F.3d 1484 (9th Cir. 1995) ........................................................................... 12

*PepsiCo, Inc. v. California Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) ........................................................... 9

*Pollard v. E. I. Du Pont De Nemours*,
   532 U.S. 843 (2001) ......................................................................................... 11

*Reynaga v. Roseburg Forest Prod.*,
   847 F.3d 678 (9th Cir. 2017) ...........................................................................8

*TeleVideo Systems, Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987) ...........................................................................7

*U.S. v. W.T. Grant Co.*,
   345 U.S. 629 (1953) .......................................................................................15

*United States v. High Country Broad. Co.*,
   3 F.3d 1244 (9th Cir. 1993) ...........................................................................11

*Yelp Inc. v. Catron*,
   70 F. Supp. 3d 1082 (N.D. Cal. 2014) ........................................................9, 10

**Statutes**

26 U.S.C. § 6621 ..................................................................................................12

42 U.S.C. 2000e–2 .................................................................................................1

42 U.S.C. § 1981a(a)(1) ....................................................................................1, 11

42 U.S.C. § 1981a(b)(1) ......................................................................................14

42 U.S.C. § 1981a(b)(3) .................................................................................10, 13

42 U.S.C. § 1981a(b)(3)(A) ................................................................................13

42 U.S.C. § 2000e-2(a)(1) .....................................................................................7

42 U.S.C. § 2000e-5(g) ........................................................................................11

42 U.S.C. § 2000e-5(g)(1) ...................................................................................15

**Other Authorities**

Fed. R. Civ. P 5(b)(2)(C) .......................................................................................2

Fed. R. Civ. P. 55(b)(2) ..........................................................................................6

Federal Rule of Civil Procedure 55(a) ................................................................1, 2

Federal Rule of Civil Procedure 55(b) ....................................................................1

Rule 54(c) .............................................................................................................11

**I.      INTRODUCTION**

For over four years, Defendant Elite Wireless Group, Inc. ("Elite") has hindered this litigation by refusing to defend itself, leaving Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") and Charging Party ███████████ ("Charging Party") with no remedy for the severe emotional distress she suffered as a 19-year-old victim of sexual assault and harassment at the hands of Elite's 33-year-old Store Manager.  Elite never filed a responsive pleading to the EEOC's First Amended Complaint, which was due on March 29, 2023—and the Clerk entered default under Federal Rule of Civil Procedure 55(a) on August 17, 2023.  (ECF 51.)  Elite also failed to hire replacement counsel after its attorney withdrew on August 9, 2022, in direct violation of this Court's Order.  (ECF 39.)  The EEOC now moves the Court for a default judgment against Elite pursuant to Federal Rule of Civil Procedure 55(b) based on its failure to respond to the First Amended Complaint as well as its failure to retain counsel to appear as a corporation.

As detailed in the First Amended Complaint, Elite unlawfully discriminated against Charging Party on the basis of her sex (female) in violation of Title VII of the Civil Rights Act of 1964 by subjecting her to sexual harassment.  (ECF 42 – FAC ¶¶ 24-44.)  Elite Store Manager Randy Dela Cruz ("Dela Cruz") made unwanted sexual comments to Charging Party once or twice a day, at least four days per week, including that he wanted to "hook up" and "have a one-night stand" with her, followed her around the Arden Fair Mall in Sacramento, California, where she worked, and grabbed her buttocks, despite her protests.  And at Elite's 2017 holiday party, Dela Cruz violently assaulted Charging Party, ripping her clothes off, forcing himself onto her, and leaving her with multiple bruises.  When she complained to Elite's management officials, they did nothing to protect her from Dela Cruz.  Instead, Elite fired her.

The Court must now hold Elite responsible by granting the EEOC's motion for default judgment and awarding $100,000, the cap for compensatory and punitive damages, plus $10,403.90 in backpay and prejudgment interest.  An award of the cap for compensatory and punitive damages is statutorily authorized pursuant to Title VII of the Civil Rights Act, as amended, and the Civil Rights Act of 1991, and warranted by the severity Charging Party's emotional distress as detailed in her declaration. 42 U.S.C. 2000e–2; 42 U.S.C. § 1981a(a)(1); (*See also* Declaration of Charging

1    Party █████████ (hereinafter "█████ Decl.") ¶¶ 3-13).

2    **II.    PROCEDURAL HISTORY**

3           The EEOC filed its initial complaint on October 29, 2019, but Elite did not file a responsive

4    pleading and the Clerk entered default against it on March 10, 2020.  (ECF 7, 8.)  Elite filed a

5    motion to vacate the default which the Court granted on October 5, 2020.  (ECF 10, 16.)  Elite

6    claimed that it ceased business operations in March 2020.[1]  The corporation was subsequently

7    suspended by the California Secretary of State on November 23, 2021, but the corporation has not

8    been formally dissolved to date.  (Declaration of Mariko Ashley ("Ashley Decl."), at ¶ 10.)  On

9    August 9, 2022, Elite's attorney, Steven Roeser of Stimmel, Stimmel & Roeser moved to withdraw

10   as counsel for Elite based on the suspension of the corporation.  (ECF 39.)  The Court granted the

11   motion but cautioned Elite that "as a business entity it cannot make any further appearance in this

12   matter without counsel appearing on its behalf," and directed Elite to retain new counsel by October

13   7, 2022.  (*Id.*)  Elite never retained replacement counsel.  Elite also ignored the Clerk's orders to

14   provide its new address to the Court by October 31, 2022 (8/25/22 Clerk Notice), November 3, 2022

15   (8/25/22 Clerk Notice No.2), and November 20, 2023 (9/13/23 Clerk Notice).

16          On March 1, 2023, the EEOC filed a First Amended Complaint alleging that Defendant

17   Wireless World LLC d/b/a Experts Choice ("Wireless World") was a successor to Elite.[2]  (ECF 42.)

18   The EEOC served the First Amended Complaint on Elite by mail to Elite's last known business

19   address at 853 Cotting Court, Suite C, Vacaville, CA 95688, consistent with Fed. R. Civ. P

20   5(b)(2)(C) based on Elite's status as an unrepresented corporation.  (ECF 44.)  Elite never filed a

21   responsive pleading, which was due by March 29, 2023.  The EEOC asked the Clerk to enter default

22   against Elite on July 27, 2023 under Fed. R. Civ. P. 55(a) (ECF 49), which the Clerk entered on

23   August 17, 2023 (ECF 51).

24   

25   [1]  On or around March 1, 2020, Defendant Wireless World acquired Elite's ownership of and legal
     interest in virtually all of the transferrable authorizations, licenses, and contracts related to Elite's
26   business operations.  (ECF 42 – FAC ¶¶ 7-8.)  Elite claims that it ceased all operations following the
     sale in or around March 2020.  (*See Id.*; ECF 34-2; Ashley Decl., at ¶ 7.)

27   [2] Defendant Wireless World answered the complaint on August 15, 2023 (ECF 50.)  The EEOC will
     continue to litigate this matter against Wireless World as the successor to Elite, as it seeks monetary
28   and injunctive relief from Wireless World.  *See infra* at Part IV(B)(5), p. 16.

III.    **STATEMENT OF FACTS**

      A.    **Store Manager Dela Cruz Sexually Harasses 19-Year-Old Charging Party**

Charging Party ▮▮▮▮▮▮ was hired as a salesclerk at Elite's Arden Fair Mall store in Sacramento, CA in March 2017, making $11.50 per hour.  (ECF 22-4, Declaration of ▮▮▮▮ ▮▮▮▮ in support of Plaintiff EEOC's Opposition to Defendant's Motion for Summary Judgment, or in the Alternative, to Dismiss for Failure to Prosecute, ¶ 3; Declaration of ▮▮▮▮▮▮ in support of Plaintiff EEOC's Motion for Default Judgment Against Elite Wireless Group, Inc. ("▮▮▮▮ Decl."), ¶ 1.)  In July 2017, Elite transferred Store Manager Randy Dela Cruz ("Dela Cruz") to the Arden Fair Mall store, and he became Charging Party's immediate supervisor.  (ECF 22-4, ¶¶ 4-5.)  Dela Cruz had the power to hire, fire, and discipline employees at the Arden Fair Mall store.  (*Id.*)

In October 2017, Dela Cruz began to make sexual comments to Charging Party on a weekly basis, including "we should hook up," "you should send me pictures," "I want to touch you," "let's get a hotel together," "we should get a hotel and hook up," and "let's have a one-night stand."  (ECF 22-4, ¶ 6.)  She rejected Dela Cruz's advances by saying "no," and reminding him that he had a wife and kids.  (*Id.*, ¶¶ 6-7.)  Dela Cruz would respond, saying "why not?" "it's not anything weird," or "we're going to get a divorce anyway."  (*Id.*)  Charging Party complained to Elite's District Sales Manager Edwin Pawley ("Pawley"), who laughed it off and told her that Dela Cruz was probably just joking and not being serious.  (*Id.*, ¶ 8.)

On or about November 17, 2017, Charging Party told Dela Cruz that she was going to shop in the mall for clothes for Elite Wireless's holiday party.  (*Id.*, ¶ 9.)  Dela Cruz followed her around the mall, even though she did not ask him to join her.  (*Id.*)  Dela Cruz suddenly told Charging Party that he wanted to slap her buttocks.  (*Id.*)  She told him not to, but he slapped her buttocks anyway.  (*Id.*)  She immediately asked Mr. Dela Cruz why he thought it was okay to touch her, and Dela Cruz responded that "he couldn't help himself."  (*Id.*)

      B.    **Dela Cruz Sexually Assaults Charging Party at Elite's Holiday Party**

On November 19, 2017, Elite Wireless held a holiday party for the Arden Fair Mall staff, including Dela Cruz and Charging Party.  (*Id.*, ¶ 10.)  Many of the staff drank alcohol during the

party.  (*Id*.)  Dela Cruz invited staff back to his hotel room for an after-party, where the group continued drinking and celebrating.  (*Id*., ¶ 11.)  At around 12:30 a.m., the attendees began to leave the hotel room.  (*Id*.)  Charging Party texted her boyfriend for a ride home.  (*Id*.)  Shortly after midnight, the last of Charging Party's co-workers had departed the hotel while she was waiting for her boyfriend to pick her up.  (*Id*.)

As soon as they were alone, Dela Cruz sexually assaulted Charging Party, grabbing her arms and kissing her on the mouth and neck.  (ECF 22-4, ¶ 12.)  She pushed Dela Cruz away, but he pushed her onto the bed.  (*Id*.)  She tried to leave and told Dela Cruz to stop, but Dela Cruz pulled down her pants and exposed her genitals.  (*Id*.)  Dela Cruz then kissed and licked her pelvic area.  (*Id*.)  Charging Party was eventually able to get up, and ran to the door but Dela Cruz grabbed her again.  (*Id*.)  She screamed and was able to run outside to the parking lot where her boyfriend was waiting.  (*Id*.)  The next morning, Charging Party went to the Rocklin County Police Department to file a criminal report.  (*Id*.)  The medical examiner noted multiple bruises on her body.  ( █████ Decl., ¶ 2, and Ex. A – Police Report at 6.)

**C.    Elite Terminates Charging Party**

Charging Party promptly contacted Elite's CEO, Edgardo Melgar ("Melgar") right after she left the Police Department and alerted him that Dela Cruz had sexually assaulted her.  (ECF 22-4, ¶ 14.)  The following day, she also e-mailed Melgar to inform him that she had filed a report with the Police Department.  (*Id*.)

After the attack, Charging Party began suffering emotionally and psychologically.  (*Id*., at ¶ 15.)  She avoided staff meetings because she could not bear to be around Dela Cruz.  (*Id*., ¶ 16.)  She requested leave, but Elite denied her requests.  (*Id*.)  She also asked to be separated from Dela Cruz, but was initially told that it could not be done because Dela Cruz was the Store Manager.  Instead, Elite transferred Charging Party to another store 45-miles from her home.  (*Id*., ¶ 17.)

Because of Charging Party's emotional suffering from the attack, she had a hard time going to work and was late and absent at times in December 2017.  (*Id*., ¶ 18.)  On or about December 21, 2017, Melgar and Pawley told her that they believed Elite was not responsible for the attack by Dela Cruz.  (*Id*., ¶ 19.)  Elite fired Charging Party on December 29, 2017 for attendance issues.  (*Id*. ¶ 20.)

### D.      Charging Party's Emotional Distress

In the aftermath of the sexual harassment and assault by Dela Cruz, Charging Party suffered from flashbacks, crying spells, anxiety attacks, and dissociative episodes during which her mind goes completely blank and afterwards, she is left exhausted and in a bad mood.  (████ Decl., ¶¶ 3-4.)  At first, the dissociations occurred for 10-15 minutes at a time, many times a day, and often prevented her from working.  (*Id.*, ¶ 4.)  She was depressed and could not leave her room for days on end.  (*Id.*, ¶ 3.)  Charging Party also could not eat, threw up a lot, and lost 15 pounds as a result.  (*Id.*)  For 3-4 months, she noticed that handfuls of hair would fall out when she brushed it.  (*Id.*)  She had sleep disturbances including trouble falling asleep, waking up 2-3 times per night, and nightmares.  (*Id.*, ¶ 4.)  Charging Party also had anxiety attacks that caused stomachaches, cramps, nausea, and sweats a couple of times per week, every week.  (*Id.*)  These symptoms persisted from December 2017, through 2021.  (*Id.*)

Because Charging Party's symptoms persisted, she sought medical help from her primary care doctor and a psychiatrist in 2021.  (████ Decl., ¶ 7.)  The psychiatrist diagnosed Charging Party with major depressive disorder and prescribed Charging Party anti-depressant medication which she continues to take to this day.  (*Id.*)  The anti-depressants help her cope, but she still struggles with dissociations about 2-3 times per day for several minutes where her mood completely changes.  (*Id.*, ¶¶ 7-8.)  The sleep disturbances and anxiety attacks have also improved, but still occur about every two weeks and sometimes force her to miss work.  (*Id.*, ¶¶ 7-8.)

Charging Party's relationships have been impacted by the sexual harassment she endured at Elite, as it is difficult for her to trust others.  (*Id.,* ¶¶ 9-11.)  She is now a mother of two young girls, and as a sexual assault victim, she is scared for her daughters and overprotective.  (*Id.,* ¶ 11.)  She does not trust male family members to watch her daughters, as she "would rather be safe than sorry."  (*Id.*)  The trauma has also affected her dating relationships: she does not trust anyone and does not want to be taken advantage of.  (*Id.,* ¶ 10.)  She has noticed that she is more irritable than before the sexual assault and is more likely to get angry since she was assaulted.  (*Id.,* ¶ 9.)

After Elite fired her, Charging Party struggled to make ends meet financially.  (*Id.,* ¶ 5.)  Her car was repossessed because she was unable to make the payments.  (*Id.*)  Because of the

1  repossession and loss of a vehicle to commute, it was difficult for her to find a new job.  (*Id*.)

2  Eventually, she worked for Verizon from April 23, 2018, to November 3, 2018, as a full-time sales

3  associate making $11.00 per hour.  (*Id., ¶* 6.)  Working in an environment similar to Elite Wireless

4  brought back memories of the sexual assault and harassment.  (*Id*.)  Once, she was triggered when a

5  male co-worker locked the door at closing time while they were working alone together, which made

6  her feel fearful, trapped, and panicked.  (*Id*.)  At other times, she would avoid meetings with the

7  regional or district managers because of her past experiences with Elite's management, which was

8  frustrating for her Verizon managers.  (*Id*.)  She endured the lingering work-related trauma until she

9  left the Verizon position, including fear of working alone with male supervisors.  (*Id., ¶¶* 6, 12.)

10  **IV.    LEGAL ANALYSIS**

11      **A.    The EEOC is Entitled to Default Judgment Against Elite**

12          The decision to grant a request for default judgment lies in the sole discretion of the Court, as

13  provided by Fed. R. Civ. P. 55(b)(2).  The Court may consider several factors when deciding to

14  exercise its discretion to enter default judgment, including: (1) the possibility of prejudice to the

15  plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)

16  the sum of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether the

17  default was due to excusable neglect, and (7) the strong public policy underlying the Federal Rules

18  of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir.

19  1986).  All factors militate in favor of entering default judgment against Elite.

20          **1.    Prejudice to EEOC and Charging Party**

21          The EEOC and Charging Party will be prejudiced if this Court does not grant default

22  judgment against Elite.  If denial of an application for default judgment would leave plaintiff without

23  a remedy, this factor weighs in favor of default judgment.  *Johnson v. Patel*, No.

24  215CV02298MCEEFB, 2017 WL 999462, at *2 (E.D. Cal. Mar. 15, 2017) (citation omitted); *see*

25  *also E.E.O.C. v. Zoria Farms, Inc*., No. 113CV01544DADSKO, 2016 WL 8677142, at *3 (E.D. Cal.

26  May 13, 2016), *report and recommendation adopted*, No. 113CV01544DADSKO, 2016 WL

27  11662114 (E.D. Cal. July 22, 2016) (hereinafter "*Zoria Farms*") (citations omitted) (holding that

28  denial of default judgment would prejudice EEOC where defendant did not file an answer or

1  otherwise defend itself in the action, did not obtain counsel, and did not respond to the request for

2  entry of default, the entry of default, or the motion for default judgment).

3         There will be no other remedy, absent default judgment, for the severe emotional distress

4  Charging Party suffered after Elite's manager harassed and sexually assaulted her or for the wages

5  she lost because Elite fired her.  And, without judgment, the EEOC cannot obtain injunctive relief to

6  protect against repetition of the behavior if Wireless World is deemed its successor.  (*See infra*, Part

7  IV(B)(5) at p. 16.)  Elite has refused to litigate this matter.  It failed to obtained replacement counsel

8  as ordered by the Court, failed to respond to the First Amended Complaint, failed to respond to the

9  EEOC's request for default and the Clerk's entry of default, and failed to update its contact

10 information.  Because of Elite's complete refusal to participate in this action, a default judgment is

11 the only recourse for the EEOC to recover injunctive relief or any relief for Charging Party's

12 emotional distress and lost wages.

13                    **2.      The Merits of EEOC's Substantive Claims and Sufficiency of the FAC**

14        The EEOC's First Amended Complaint sufficiently states a claim upon which relief can be

15 granted.  Entry of default constitutes an admission to the facts in the complaint with respect to

16 liability.  *TeleVideo Systems, Inc. v.  Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).  "Where there is

17 a properly pled and supported complaint and the defendants have failed to oppose the motion…no

18 factual disputes exist that would preclude the entry of default judgment."  *Johnson*, 2017 WL

19 999462, at *2; *E.E.O.C. v. Trimbco, Inc.,* No. 06-6141 PVT, 2009 WL 733888, at *3 (N.D. Cal.

20 Mar. 17, 2009); *see also Farsakian v. Kent*, No. CV-20-00141-PHX-MTL, 2020 WL 6363729, at *2

21 (D. Ariz. Oct. 29, 2020) ("The second and third *Eitel* factors—the merits of the claim and the

22 sufficiency of the complaint—are often analyzed together and require courts to consider whether a

23 plaintiff has stated a claim on which it may recover." (internal quotation marks and citations

24 omitted)).

25        The First Amended Complaint alleges in detail how Elite engaged in unlawful sex

26 discrimination in violation of Title VII by subjecting Charging Party to sexually hostile work

27 environment and denying her equal employment opportunities because of her sex.  (ECF 42 – FAC,

28 ¶¶ 24-44.)  42 U.S.C. § 2000e-2(a)(1); *see also Zoria Farms,* 2016 WL 8677142, at *3

1  ("Discriminatory conduct includes harassment when that harassment occurs because of sex."

2  (internal citations omitted)).  An employer is liable for sexual harassment against a female employee

3  when it subjects her to unwelcome verbal or physical conduct sufficiently severe or pervasive to

4  alter the conditions of her employment and create an abusive working environment.  *Faragher v.*

5  *City of Boca Raton*, 524 U.S. 775, 786 (1998).  An employer is vicariously liable for a hostile work

6  environment created by a supervisor with immediate (or successively higher) authority over an

7  employee.  Where the harassment culminates in a tangible employment action, such as discharge, the

8  employer has no defenses and is strictly liable.  Otherwise, the employer can avoid liability by

9  proving an affirmative defense.  *Id.,* 524 U.S. at 807-808.  *See also Reynaga v. Roseburg Forest*

10  *Prod.*, 847 F.3d 678, 688 (9th Cir. 2017) (citation omitted).  However, the entry of default against

11  Elite deprived it of all affirmative defenses.  *See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty*

12  *Corp.*, 973 F.2d 155, 159 (2d Cir. 1992).

13          Through the default, Elite has now admitted that for at least three months Store Manager

14  Dela Cruz hounded Charging Party with offensive and unwanted comments once or twice a day, four

15  days a week, despite her objections—and that he sexually assaulted her in a hotel room during

16  Elite's holiday party.  (ECF 42 – FAC, ¶¶ 28-36.)  Because Dela Cruz was her direct supervisor and

17  had managerial authority, Elite is responsible for his conduct.  Elite also has admitted that it failed to

18  protect Charging Party once it became aware that Dela Cruz was making sexual comments to her,

19  and after Dela Cruz sexually assaulted her.  (ECF 42 – FAC, ¶¶ 38-40.)  Instead, Elite forced

20  Charging Party to work with her attacker and then ultimately fired her, a tangible employment action

21  subjecting Elite to strict liability.  Thus, the EEOC has sufficiently pleaded discrimination based on

22  sex under Title VII of the Civil Rights Act.  *See Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1162

23  (9th Cir. 2017) ("[T]he harassment need not be so severe as to cause diagnosed psychological injury.

24  It is enough if such hostile conduct pollutes the victim's workplace, making it more difficult for her

25  to do her job, to take pride in her work, and to desire to stay in her position." (internal quotation

26  marks and citations omitted)); *see also Farsakian*, 2020 WL 6363729 at *3 (holding that plaintiff's

27  allegations that she was subjected to four months of unwanted sexual advances which made her

28  "uncomfortable" and caused fear that she would lose her job were sufficient to state a claim for

pervasive sexual harassment that created a hostile work environment under Title VII).

Moreover, all the allegations contained in the First Amended Complaint are supported by Charging Party's sworn declarations, which further detail the severe and pervasive nature of the sexual harassment she experienced at the hands of Dela Cruz.  (ECF 22-4 – FAC, ¶¶ 24-44; ECF 22-4 – ████ Decl., ¶¶ 3-20.)  Her declarations illustrate specific language Dela Cruz used (i.e., "we should hang out," "we should hook up," "you should send me pictures," "I want to touch you," "let's get a hotel together," "we should get a hotel and hook up, and "let's have a one-night stand"); describe how Dela Cruz followed her around the mall and slapped her buttocks after she told him not to because "he couldn't help himself"; and detail how Dela Cruz violently sexually assaulted her in the hotel room by pushing her down, pulling her pants down, and forcing himself on her.  (ECF 22-4 – ████ Decl., ¶¶ 6-12.)  Further, this Court has already held that Charging Party's declaration (ECF 22-4) "easily satisfies" the EEOC's requirement to produce material facts sufficient to support a prima facie case of sex discrimination due to a hostile work environment and "removes even any esoteric doubt on this issue," "particularly since physical assault involving an intimate body part, as alleged by [Charging Party], 'constitutes one of the most severe forms of sexual harassment.'"  (ECF 27, 8-10 (citing *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001).)

### 3.   The Amount of Money At Stake

Under *Eitel,* Courts weigh "the money at stake in relation to the seriousness of the [defendant's] conduct" to determine whether a default judgment is appropriate.  *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002).  When the money at stake is "tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014) (citations omitted).   The Court also has "wide discretion" in determining the statutory damages award.  *E.E.O.C. v. Pac. Fun Enterprises LLC*, No. CV 17-00482, 2020 WL 406681 (D. Haw. Jan. 7, 2020), *report and recommendation adopted*, No. CV 17-00482, 2020 WL 406372 (D. Haw. Jan. 23, 2020).

The EEOC seeks reasonable damages consistent with the facts of this case, including the severity and continuing nature of Charging Party's emotional distress.  *See infra* Part IV(B) at p. 11 (discussing damages calculation)*; see, e.g., Farsakian*, 2020 WL 6363729, at *4 (finding that

$736,041.43 in back wages, compensatory and punitive damages, and attorney fees was "appropriately proportionate" in relation to sexual harassment and retaliation claims). Additionally, because the amount of damages is authorized and capped by statute, the Court should find that this factor weighs in favor of default judgment. 42 U.S.C. § 1981a(b)(3); *Yelp Inc*, 70 F. Supp. 3d at 1100 (holding that plaintiff's request for $2 million in damages was "reasonable" given that it was authorized by statute); *see also E.E.O.C. v. Sunfire Glass, Inc*., No. CV-08-1784-PHX-LOA, 2009 WL 976495, at *12 (D. Ariz. Apr. 10, 2009) (finding that the statutory cap applied in sexual harassment case involving unwanted sexual comments and groping).

### 4.   Elite Cannot Show Excusable Neglect

Elite has no excuse for failing to defend this action. A defendant's conduct is culpable where "there is no explanation of the default inconsistent with a devious, deliberative, willful, or bad-faith failure to respond." *Emp. Painters' Tr. v. Ethan Enterprises, Inc.*, 480 F.3d 993, 1000 (9th Cir. 2007) (upholding a district court's default based on Defendant's failure to obtain substitute counsel for corporation, finding no excusable neglect); *see also Bd. of Trustees of IBEW Loc. Union No. 100 Pension Tr. Fund v. Porges*, No. 1:11-CV-02048-LJO, 2013 WL 4012009, at *5 (E.D. Cal. Aug. 6, 2013) ("Although [] Defendants initially answered the Complaint and denied the allegations, they demonstrated a complete disregard for the litigation process. They have been given opportunities to dispute material facts but have failed to comply with Court orders, refused to retain counsel as required, and have not shown cause as ordered for their failure to file a joint pretrial statement and defend meaningfully the claims against them.").

Elite received notice of the First Amended Complaint, and had an opportunity to respond but opted not to file a responsive pleading. Moreover, Elite has had notice of this litigation since the initial Complaint was filed four years ago. The Court ordered Elite to find alternate counsel on August 9, 2022 (ECF 39), and Elite has simply failed to comply for the past year. There is no evidence that Elite's failure to defend itself can be attributed to excusable neglect.

### 5.   Public Policy Will Not Be Harmed By Default Judgment

Although public policy typically favors a decision on the merits, the Federal Rules of Civil Procedure authorize the Court to enter default judgment in circumstances like these where a ruling

on the merits is not required.  A ruling on the merits is impossible given Elite's failure to appear and retain counsel.  *See United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993); *see also Zoria Farms,* 2016 WL 8677142, at *9.  Moreover, public policy supports an entry of default judgment where plaintiff is otherwise left without a remedy.  *See supra* Part IV(A)(1*); see also Johnson,* 2017 WL 999462, at *2; *J & J Sports Prods., Inc. v. Concepcion*, No. C 10-05092 WHA, 2011 WL 2220101, at *2 (N.D. Cal. June 7, 2011).

**B.     Damages**

**1.     The EEOC's Requested Damages Are Reasonable Under Title VII and Satisfy Rule 54(c)**

Title VII authorizes remedies including "injunctions, reinstatement, front pay, back pay, lost benefits, training and monitoring," as well punitive damages.  *Pollard v. E. I. Du Pont De Nemours*, 532 U.S. 843, 847 (2001); 42 U.S.C. § 2000e-5(g); 42 U.S.C. § 1981a(a)(1).  The goal is to make whole the person injured by the discriminatory conduct and restore them as fully as possible to the position they otherwise have been in absent discrimination.  *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 763–64 (1976).

Any relief awarded may not be different in kind from, or exceed in amount, what is demanded in the complaint.  Fed. R. Civ. P. 54(c); *see also Zoria Farms,* 2016 WL 8677142, at *3. The EEOC's Prayer for Relief seeks (1) "appropriate back pay, lost benefits, and prejudgment interest…and other affirmative relief necessary to eradicate the effects of [Elite's] unlawful employment practices, including but not limited to reinstatement or front pay," (2) "past and future pecuniary losses… including job search expenses and medical expenses," (3) "non-pecuniary losses…including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, and (4) "punitive damages for…malicious and reckless conduct," as well as injunctive relief.  (ECF 42 – FAC, Prayer for Relief, ¶¶ A-H.)  Thus, while the First Amended Complaint does not seek a specific damages amount, it can recover an amount above the amount pleaded in the complaint since the complaint sets forth the types of damages to be proven at trial.  *Henry v. Sneiders*, 490 F.2d 315, 317, n.2 (9th Cir. 1974).  The EEOC has satisfied the requirements of Rule 54(c).

## 2.      Backpay With Prejudgment Interest

The EEOC seeks backpay for Charging Party from December 29, 2017, when she was fired

by Elite, through November 3, 2018, when she voluntarily removed herself from the workforce.[3]

"[B]ackpay should be denied only for reasons which would not frustrate the central statutory purpose

of eradicating discrimination and making persons whole." *Odima v. Westin Tuscan Hotel*, 53 F.3d

1484, 1495 (9th Cir. 1995); *see also Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1020 (9th Cir.

2000).[4]  Back pay is calculated by subtracting an employee's actual earnings subsequent to

termination from the amount the employee would have earned absent the employer's discriminatory

conduct.  *Edwards v. Occidental Chemical Corp.*, 892 F.2d 1442, 1449 (9th Cir. 1990); *Kraszewski*

*v. State Farm General Ins. Co.*, 912 F.2d 1182, 1186 (9th Cir. 1990).  Back pay also includes an

award of prejudgment interest calculated at the IRS interest rate for underpayment of taxes.  26

U.S.C. § 6621.

At Elite, Charging Party made $11.50 per hour.  (⬛⬛⬛ Decl., ¶ 1.)  She was fired by Elite

on December 29, 2017.  (*Id.*)  She did not find a new job until April 23, 2018, when she began

working for Verizon earning $11.00 per hour.  (*Id.,* ¶ 6.)  She remained employed by Verizon until

November 3, 2018.  (*Id.*)  Accounting for Charging Party's mitigation of losses, she is owed

$7,916.00 in lost wages and $2,487.90 in prejudgment interest.  (Ashley Decl. ¶ 6, Ex. A.)  Thus, the

EEOC is entitled to recover $10,403.90 in lost wages and prejudgment interest for Charging Party.

(*Id.*, Ex. A (providing prejudgment interest calculation based on IRS interest rate for underpayment

of taxes).)

## 3.      Compensatory Damages

Charging Party should be awarded damages for the emotional and psychological injuries she

suffered.  Under Title VII, a plaintiff is entitled to compensatory damages for "emotional pain,

---

[3]  *See Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1020 (9th Cir. 2000), as amended on denial of reh'g (Nov. 2, 2000) (employee's voluntary withdrawal from the workforce cuts off backpay).

[4]  The entry of default against Elite deprives it from alleging any affirmative defenses, including failure to mitigate backpay.  However, Charging Party's declaration shows that she did mitigate backpay damages with reasonable diligence.  (*See* ⬛⬛⬛ Decl. ,¶ 6.)  *See also Inda v. United Air Lines, Inc.*, 565 F.2d 554, 562 (9th Cir. 1977) (upholding finding of reasonable diligence where 5 to 8 months elapsed between resignation and application for re-employment).

suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3); *see also* U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-1992-3, Enforcement Guidance: Compensatory and Punitive Damages Available under Sec 102 of the CRA of 1991 (1992) ("Emotional harm may manifest itself, for example, as sleeplessness, anxiety, stress, depression, marital strain, humiliation, emotional distress, loss of self esteem, excessive fatigue, or a nervous breakdown.")

A victim's testimony alone is sufficient to award compensatory damages for emotional pain and suffering. *Chalmers v. City of Los Angeles*, 762 F.2d 753, 761 (9th Cir. 1985). The Court may award compensatory damages by default judgment without a hearing based on detailed affidavits. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (upholding the use of affidavits to determine compensatory damages); *see also Adolph Coors Co. v. Movement Against Racism & Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (same). Charging Party has provided a declaration detailing her emotional distress, which includes crying spells, dissociative episodes, anxiety, depression, vomiting, weight fluctuations, sleep disturbances including trouble falling asleep as well as nightmares, intrusive thoughts and flashbacks, stomachaches, nausea, sweating, hair loss, fear of working with male supervisors and colleagues, fear for the safety of her daughters, increased anger, interruptions in interpersonal relationships, and financial worries. (█████ Decl., ¶¶ 3-13.)

Upon information and belief, Elite employed between 100 and 200 employees at the time of the unlawful actions described in the First Amended Complaint. (Ashley Decl., ¶ 4.) Thus, the statutory cap for compensatory and punitive damages is $100,000. 42 U.S.C. § 1981a(b)(3)(A). Given the considerable emotional pain and suffering Charging Party endured due to Elite's egregious conduct, the EEOC requests that the Court award the statutory limit of $100,000 in compensatory damages.[5] *See e.g., Goodson v. Cnty. of Plumas*, No. 2:18-CV-03105-KJM-DB, 2023 WL 4678990, at *23 (E.D. Cal. July 21, 2023) (awarding $500,000 in compensatory damages for

---

[5] "It has been widely held by courts that…the financial standing of the defendant is inadmissible as evidence in determining the amount of compensatory damages to be awarded." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citations omitted).

pain and suffering caused by sexual harassment and retaliation, consistent with similar, recent cases in California); *Allain v. Miller*, No. CV 22-03131, 2023 WL 6520490, at *6 (E.D. Pa. Oct. 5, 2023) (awarding $200,000 in compensatory damages for emotional psychological distress due to manager repeatedly making unwanted sexual comments, exposing himself, and sexually assaulting his administrative assistant).

### 4. Punitive Damages Are Appropriate

Punitive damages may be awarded where the defendant intentionally engaged in egregious discriminatory practices, or where such practices were done with malice or reckless indifference to the federally protected rights of the aggrieved individual. *Kolstad v. American Dental Assoc.*, 527 U.S. 526 (1999); 42 U.S.C. § 1981a(b)(1). The Court should award punitive damages because Dela Cruz targeted teenaged Charging Party, harangued her with frequent unwanted sexual comments, slapped her buttocks without her consent, and brutally sexually assaulted her including ripping her clothes off and forcing himself on her most intimate bodily areas. Moreover, when Charging Party alerted District Sales Manager Pawley and CEO Melgar of Dela Cruz's sexual harassment and sexual assault, they refused to take any action to protect her and tried to convince her that Elite was not liable for Dela Cruz's behavior. These actions were intentional, malicious, and willfully disregarded Charging Party's right to be free from sex-based discrimination. Accordingly, a punitive damages award is appropriate to punish Elite for its discriminatory behavior and to deter this type of egregious conduct from happening again. *See, e.g., Sunfire Glass*, 2009 WL 976495, at *12 (awarding $50,000 in punitive damages in default judgment involving sexual harassment claims); *Trimbco*, 2009 WL 733888, at *4 (awarding six aggrieved employees $300,000 total punitive damages); *Zoria Farms*, 2016 WL 8677142, at *19 (awarding nine aggrieved employees $1,800,000 total punitive damages).

The severity of Charging Party's emotional distress damages alone supports an award of damages up to the $100,000 statutory cap; however, if the Court finds that her emotional distress does not reach the cap, the Court should award punitive damages in an amount sufficient to close the gap.

/ / /

### 5.     Injunctive Relief

The Court has authority to grant equitable relief to effectuate the purposes of Title VII.  "If the court finds that [an employer] has intentionally engaged in…an unlawful employment practice charged in the complaint, the court may enjoin the [employer] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate."  42 U.S.C. § 2000e-5(g)(1).  Victims of employment discrimination are generally entitled to an injunction against future discrimination unless the employer proves it is unlikely to repeat the practice.  *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1544 (9th Cir. 1987) (hereinafter *Goodyear*) (citations omitted). This is a "heavy burden."  *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). "By seeking injunctive relief, the EEOC promotes public policy and seeks to vindicate the rights belonging to the United States as a sovereign."  *Goodyear,* 813 F.2d at 1543 (internal quotation marks and citations omitted).

To avoid the imposition of injunctive relief an employer must prove that "there is no reasonable expectation that the wrong will be repeated," and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citations omitted).  Only if both conditions are met will an action be considered moot.  *Id.*

Injunctive relief is necessary to ensure that Elite and any successor does not continue to violate Title VII.  As set forth in the First Amended Complaint, the EEOC requests that the Court "[g]rant a permanent injunction enjoining Defendants, and their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in sex discrimination against employees, and engaging in any other employment practices that discriminate on the basis of sex." (ECF 42 – FAC, Prayer for Relief, § A.)  The EEOC also requests that the Court order Defendants "to institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees, and that eradicate the effects of their past and present unlawful employment practices."  (*Id*., Prayer for Relief, § B.)  *See also Trimbco*, 2009 WL 733888, at *5 (awarding similar injunctive relief).

There is evidence of a plausible chance of recurrence of the Elite's Title VII violations. Contrary to Elite's prior assertion that it stopped conducting business following the sale of its assets

1  to Defendant Wireless World in March 2020, Elite has not been dissolved, continues to hold its own

2  funds in bank accounts, and, as outlined in the Wireless World sales agreement, its executives may

3  be involved in or consulting for retail locations that it previously operated.  (Ashley Decl., ¶¶ 7-10.)

4  And the Arden Fair Mall location where Charging Party worked, located at 1689 Arden Way, Ste

5  2184C, Sacramento, CA 95815, continues to operate as a T-Mobile store.[6]  (*Id.,* ¶ 9 and Ex. C –

6  Lease Agreement.)  Given evidence suggesting Elite's continued operations, discrimination will

7  likely continue absent injunctive relief.  Thus, the Court should grant an award of injunctive relief

8  against Elite at this time.

9        Defendant Wireless World has answered the First Amended Complaint, so the EEOC is not

10  seeking a default judgment against it.  However, the EEOC will continue to seek monetary and

11  injunctive relief against Wireless World as a successor to Elite based on any underlying award of

12  injunctive relief against Elite.  *See E.E.O.C. v. MacMillan Bloedel Containers, Inc*., 503 F.2d 1086,

13  1092 (6th Cir. 1974) (holding that "full relief," including monetary and injunctive relief can be

14  awarded against a successor where a predecessor cannot provide complete relief).  For these reasons,

15  an injunction against Elite is necessary to ensure that sexual harassment is eradicated and to make

16  Charging Party whole for the discrimination she endured.

23  / / /

24  / / /

25  / / /

---

[6]  Elite sold mobile devices under an agreement with Sprint Corporation ("Sprint").  (Ashley Decl. ¶ 3.)  Sprint merged with T-Mobile on April 1, 2020.  (*Id*.)  The agreement between Elite and Sprint was transferred to Defendant Wireless World on March 1, 2020.  (*Id*.)

1

## V.     <u>CONCLUSION</u>

2       The EEOC respectfully requests entry of default judgment and total damages award of

3   $110,403.90 without a hearing based on the facts admitted in the First Amended Complaint,

4   declarations of Charging Party, and pleadings on file.  *See Delgado v. Dempsey's Adult Care Homes,*

5   *LLC*, No. 22-15176, 2023 WL 3034263, at *2 (9th Cir. Apr. 21, 2023) (district court retains

6   discretion to enter default judgment and calculate damages without a hearing).

7

8   DATED this 13th day of November, 2023.

9

10  By:   */s/  Mariko Ashley*

11
    ROBERTA L. STEELE                          KARLA GILBRIDE
12  Regional Attorney                          General Counsel

13  MARCIA L. MITCHELL                         CHRISTOPHER LAGE
14  Assistant Regional Attorney                Deputy General Counsel

15  JAMES H. BAKER
    Senior Trial Attorney                      Office of the General Counsel
16                                             131 "M" Street NE
    MARIKO M. ASHLEY                           Washington, D.C. 20507
17  Trial Attorney

18
    U.S. EQUAL EMPLOYMENT OPPORTUNITY
19  COMMISSION
    San Francisco District Office
20  450 Golden Gate Ave., 5th Floor West
    P.O. Box 36025
21  San Francisco, CA 94102

22  *Attorneys for Plaintiff EEOC*

23

24

25

26

27

28