UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ELITE WIRELESS GROUP, INC., ET AL.,<br><br>Defendants. | 2:19-cv-02187-MCE-CKD<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Presently pending before the court is plaintiff U.S. Equal Employment Opportunity Commission's ("EEOC" or "plaintiff") motion for default judgment against defendant Elite Wireless Group, Inc. ("Elite" or "defendant").[1] (ECF No. 53.) The EEOC seeks relief in the form of back pay, compensatory and punitive damages, and injunctive relief. (ECF No. 53-2.)

The EEOC alleges that Elite violated Title VII when the Charging Party's[2] supervisor ("Store Manager") sexually harassed her with offensive and unwanted comments once or twice a day, four days a week, despite her objections—and that he sexually assaulted her in a hotel room after Elite's holiday party. (ECF No. 42 at ¶¶ 28-36.)

---

[1] This motion is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Local Rule 302(c)(19).

[2] The Charging Party's name has been redacted to protect her privacy. (<u>See</u> ECF No. 57.)

1

After defendant failed to file an opposition to the motion for default judgment in accordance with Local Rule 230(c), the motion was submitted on the record and written briefing. (ECF No. 58.)  For the reasons discussed below, the undersigned recommends that plaintiff's motion for default judgment be GRANTED.

### I. Background

#### A. Factual Allegations Against Elite

Charging Party was hired as a salesclerk at Elite's Arden Fair Mall store in Sacramento, California in March 2017.  (ECF No. 42 at ¶¶ 25-26.)  She was a teenager at the time.  (Id. at ¶ 25.)  In July 2017, Elite transferred a new Store Manager to the Arden Fair Mall store, and he became Charging Party's direct supervisor.  (Id. at ¶ 26.)  In October 2017, the Store Manager began making unwanted, sexual comments to Charging Party, once or twice per day, at least four days a week during their shifts.  (Id. at ¶ 28.)  Charging Party reported her Store Manager's suggestive comments, such as "asking her to hang out and to hook up with him," to Elite's District Sales Manager.  (Id. at ¶ 30.)  The District Sales Manager laughed it off and said the Store Manager was just joking and was not serious.  (Id. at ¶ 31.)

On November 19, 2017, Elite held a holiday party for the Arden Fair Mall staff.  (Id. at ¶ 32.)  Everyone was drinking and celebrating the staff's accomplishments for the year.  (Id.) After the party ended, Elite's Store Manager invited staff back to a hotel room he rented, where everyone continued drinking and celebrating.  (Id. at ¶ 33.)  After other coworkers had left the hotel room, Elite's Store Manager sexually assaulted Charging Party.  (Id. at ¶¶ 34-35.)  The next morning, Charging Party filed a report with the Rocklin Police Department.  (Id. at ¶ 37; ECF No. 55-1.)  The medical examiner found five bruises on Charging Party's body.  (ECF No. 42 at ¶ 37.) Charging Party called Elite's CEO to report the assault right after she left the Police Department. (Id. at ¶ 38.)  The following day, November 21, 2017, Charging Party emailed Elite's CEO to report "that she had filed a criminal report with the Police Department." (Id.)

As a result of the physical and emotional toll the assault wreaked upon her, Charging Party requested, but was denied, leave.  (Id. at ¶ 39.)  Elite did not immediately separate the Store Manager from Charging Party.  (Id. at ¶ 40.)  Instead, Elite told Charging Party that it could not

1  transfer the Store Manager because of his role as a store manager, which was also its explanation,
2  later, for transferring Charging Party to its store in Woodland, California, which was 45-miles
3  from her home, increasing both the time and expense of her commute. (Id.)
4  　　　Charging Party suffered from flashbacks, crying spells, anxiety attacks, and dissociative
5  episodes. (ECF No. 55 at ¶¶ 3-4.) At first, the dissociations often prevented her from working.
6  (Id. at ¶ 4.) She was depressed and could not leave her room for days on end. (Id. at ¶ 3.)
7  Charging Party lost 15 pounds and began losing her hair. (Id.) She had sleep disturbances,
8  nightmares, stomachaches, and cramps. (Id. at ¶ 4.) Charging Party was diagnosed with major
9  depressive disorder and prescribed anti-depressant medication, which she continues to take to this
10 day. (Id. at ¶ 7.)
11 　　　Charging Party was late to work and sometimes absent in December 2017, for which she
12 received verbal and written warnings. (ECF No. 42 at ¶ 41.) On or about December 21, 2017,
13 Elite's CEO and its District Sales Manager visited the Woodland store and informed Charging
14 Party that its Human Resources Manager had investigated her sex harassment complaint but
15 found no evidence to corroborate her allegations. (Id. at ¶ 42.) On December 26, 2017, Elite's
16 Woodland Store Manager gave Charging Party a final written warning for four tardies and four
17 absences during the month, including a No Call/No Show on December 24, 2017. (Id. at ¶ 43.)
18 On December 29, 2017, Elite disciplined Charging Party for clocking in 17 minutes late and fired
19 her, citing repeated violations of the company's attendance policy. (Id.)
20 　　　Without a job, Charging Party struggled to make ends meet financially. (ECF. No. 55 at
21 ¶ 5.) Her car was repossessed because she was unable to make the payments. (Id.) Without a
22 vehicle to commute, it was difficult for her to find a new job. (Id.) Eventually, she worked for
23 Verizon from April 23, 2018, to November 3, 2018, as a full-time sales associate making $11.00
24 per hour. (Id. at ¶ 6.) Working in an environment similar to Elite Wireless brought back
25 memories of the sexual assault and harassment. (Id.) She endured the lingering work-related
26 trauma until she left the Verizon position, including fear of working alone with male supervisors.
27 (Id. at ¶¶ 6, 12.)
28 ////

B. Procedural History

The EEOC filed this action against Elite on October 29, 2019. (ECF No. 1.) Elite was served with process. (ECF No. 6.) On March 10, 2020, upon the EEOC's request, the clerk of court entered default against Elite. (ECF No. 8.) This entry was vacated on October 5, 2020 upon a finding of good cause. (ECF Nos. 8 and 16.) On October 14, 2020, Elite answered the complaint. (ECF No. 17.) On April 5, 2021, Elite filed a Motion for Summary Judgment, or alternatively, for Dismissal for Failure to Prosecute. (ECF No. 18.) On January 27, 2022, the assigned district judge denied the motion and admonished defendant for having filed a "baseless motion" that wasted the court's time and limited judicial resources. (ECF No. 27 at 12.)

On August 9, 2022, Elite's attorney moved to withdraw as counsel for Elite based on the suspension of the corporation. (ECF No. 39.) The court granted the motion to withdraw as attorney filed by Elite's counsel, and directed Elite to retain counsel to represent it no later than October 7, 2022. (ECF No. 39.) Elite never hired new counsel to represent it. The EEOC alleges that Elite has not been formally dissolved, despite the fact that the corporation was subsequently suspended by the California Secretary of State on November 23, 2021. (See ECF No. 42 at ¶ 8;) (ECF No. 54 at ¶ 10.) The EEOC further alleges that defendant Wireless World acquired Elite's ownership of and legal interest in virtually all of the transferrable authorizations, licenses, and contracts related to Elite's business operations. (ECF No. 42 at ¶¶ 7-8.)

The EEOC filed a First Amended Complaint against defendant Elite Wireless Group, Inc. and defendant Wireless World LLC on March 1, 2023. (ECF No. 42.) Defendant Elite failed to respond to amended complaint. Upon the EEOC's request, the clerk of court entered default judgment against Elite. (ECF Nos. 49 and 51.) The EEOC filed the instant motion on November 13, 2023. (ECF No. 53.)

II.   Legal Standard – Default Judgment

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans,

4

238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim"). A party's default does not establish the amount of damages. Geddes, 559 F.2d at 560.

III.   Discussion

A. The Eitel Factors Weigh in Favor of Granting Default Judgment

1.   *Factor One: Possibility of Prejudice to Plaintiff*

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting

5

1  a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, the EEOC would

2  potentially face prejudice if the court did not enter a default judgment.  Absent entry of a default

3  judgment, plaintiff would be without another recourse against Elite, whom it has already spent

4  substantial time and money prosecuting in this action.  Accordingly, the first Eitel factor favors

5  the entry of a default judgment.

6         2.  *Factors Two and Three: The Merits of Plaintiff's Substantive Claims and*

7  *the Sufficiency of the Complaint*

8      The court considers the merits of plaintiff's substantive claims and the sufficiency of the

9  complaint together below because of the relatedness of the two inquiries.  The court must

10  consider whether the allegations in the complaint are sufficient to state a claim that supports the

11  relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

12      Title VII of the Civil Rights Act of 1964 prohibits employer discrimination on the basis of

13  sex regarding "compensation, terms, conditions, or privileges of employment." 42 U.S.C. §

14  2000e-2(a)(1).  The statutory prohibition extends to the creation of a hostile work environment

15  that "is sufficiently severe or pervasive to alter the conditions of the victim's employment."

16  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted).  A hostile

17  work environment occurs when an employee 1) "was subjected to verbal or physical conduct of a

18  sexual nature, 2) this conduct was unwelcome, and 3) this conduct was 'sufficiently severe or

19  pervasive to alter the conditions of the victim's employment and create an abusive working

20  environment.' "  Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995) (quoting Ellison v.

21  Brady, 924 F.2d 872, 875–76 (9th Cir. 1991)). "The working environment must both subjectively

22  and objectively be perceived as abusive," and the objective analysis is done "from the perspective

23  of a reasonable" woman.  Id.

24      Allegations of Title VII violations based on a hostile work environment are sufficient "if

25  such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her

26  job, to take pride in her work, and to desire to stay in her position."  Steiner v. Showboat

27  Operating Co., 25 F.3d 1459, 1463 (9th Cir. 1994).  When harassment by a supervisor is at issue,

28  an employer is vicariously liable, subject to a potential affirmative defense.  Faragher v. City of

Boca Raton, 524 U.S. 775, 780 (1998).

                      *i.*    *Store Manager's Sexual Harassment*

The EEOC has sufficiently alleged that the Elite, through its Store Manager, violated Title VII by creating a hostile work environment. The Store Manager made offensive and unwanted sexual comments to the then-teenaged Charging Party, such as comments about wanting to "hook up." (ECF No. 42 at ¶¶ 28-30.) These comments were pervasive; that is, they occurred "once or twice a day, four days a week" at the Arden Fair Mall store when they worked the same shifts. (Id. at ¶ 28.) The Store Manager sexually assaulted the Charging Party at a work holiday party afterparty attended by co-workers and hosted by the Store Manager. (Id. at ¶¶ 32-36.) Elite's Store Manager was Charging Party's direct supervisor and had managerial authority over her. (Id. at ¶¶ 28-36.) The court can plausibly infer from these allegations that the Charging Party was subjected to unwelcome verbal and physical conduct of a sexual nature and that this conduct was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment. Fuller, 47 F.3d 1522, 1527 (9th Cir. 1995). Further, because the harassment was by the Charging Party's supervisor, the EEOC has alleged that Elite is vicariously liable. See Faragher, 524 U.S. at 780 (when harassment by a supervisor is at issue, an employer is vicariously liable, subject to a potential affirmative defense).

                      *ii.*    *Sales Manager's and CEO's Allowance of Sexual Harassment*

The EEOC has also alleged an actionable Title VII claim based on the actions of Elite's District Sales Manager and Elite's CEO. An employer may be held liable for the actionable harassment of its employees where it either ratifies or acquiesces in the harassment by not taking immediate and/ or corrective actions when it knew or should have known of the conduct. See e.g., Little v. Windermere Relocation, Inc., 301 F.3d 958, 968 (9th Cir. 2002); Folkerson v. Circus Circus Enters., Inc., 107 F.3d 754, 756 (9th Cir.1997). Here, after the Charging Party told the District Sales Manager about the Store Manager's sexual comments to her, the District Sales Manager failed to take action, laughing off the complaints about the Store Manager's offensive comments and remarking that the Store Manager was probably just joking and not being serious. (ECF No. 42 at ¶ 31.) The Charging Party was subsequently sexually assaulted by the Store

Manager. (Id. at ¶ 35.) After the Charging Party reported the sexual assault to Elite's CEO, Elite did not immediately separate Charging Party and the Store Manager. (Id. at ¶ 40.) When Elite did take action, they did so by transferring the Charging Party to its store in Woodland, which was 45-miles from her home, increasing both the time and expense of her commute. (Id.) As a result of the physical and emotional toll the assault wreaked upon her, Charging Party requested, but was denied, leave. (Id. at ¶ 39.) Elite's CEO and its District Sales Manager informed Charging Party that its Human Resources Manager had investigated her sex harassment complaint but found no evidence to corroborate her allegations. (Id. at ¶ 42.) Emotionally and psychologically traumatized by the assault, Charging Party was tardy and absent at times in December 2017. (Id. at ¶ 41.) Charging Party was ultimately fired because of repeated violations of the attendance policy. (Id. at ¶ 43.) These facts support an inference that Elite's CEO and District Sales Manager did not take immediate and/ or corrective actions when it knew of the Store Manager's sexual harassment. The undersigned therefore finds that the EEOC has plausibly alleged that Elite's CEO and District Sales Manager's created a hostile work environment.

As the FAC alleges an actionable Title VII claim against Elite under at least two theories, the undersigned finds that the second and third Eitel factors favor the entry of a default judgment.

### 3.   *Factor Four: The Sum of Money at Stake in the Action*

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). The EEOC seeks $100,000 in compensatory and punitive damages, plus $10,403.90 in backpay and prejudgment interest. (ECF No. 53-2.) This amount is reasonable in light of the conduct alleged. See Farsakian v. Kent, 2020 WL 6363729, at *4 (D. Ariz. Oct. 29, 2020) (finding $736,041.43 in back wages, compensatory and punitive damages, and attorney fees "appropriately proportionate" in relation to sexual harassment and retaliation claims). Thus, this fourth factor favors the entry of a default judgment.

////

////

        4.      *Factor Five: The Possibility of a Dispute Concerning Material Facts*

Because the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. As such, the court concludes that the fifth Eitel factor favors a default judgment.

        5.      *Factor Six: Whether the Default Was Due to Excusable Neglect*

In this case, there is no indication in the record that defendant's default was due to excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

        6.      *Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. Here however, a ruling on the merits is not reasonably possible given defendants failure to appear and retain counsel. Further, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Accordingly, this factor favors the entry of default judgment.

In sum, after considering and weighing all the Eitel factors, the court concludes that the EEOC is entitled to a default judgment against Elite, and recommends that such a default judgment be entered.

    B.    Remedies

The EEOC seeks relief in the form of backpay, compensatory and punitive damages to be awarded to the Charging Party, and injunctive relief. (ECF No. 53-2.)

        1.    Back Wages

Victims of discrimination are entitled to back pay under Title VII. 42 U.S.C. § 2000e–5(g)

1   (1994); Caudle v. Bristow Optical Co., 224 F.3d 1014, 1020 (9th Cir. 2000), as amended on
2   denial of reh'g (Nov. 2, 2000).  The purpose of equitable relief under Title VII is to "make the
3   victims of unlawful discrimination whole." Id. (quoting Ford Motor Co. v. EEOC, 458 U.S. 219,
4   230 (1982)).  A plaintiff seeking back pay has a duty to mitigate damages by seeking alternative
5   employment with reasonable diligence.  Id.

6   Here, the EEOC seeks $7,916.00 for Charging Party's lost wages.  (ECF No. 53-1 at 17.)
7   This amount was calculated by subtracting Charging Party's actual earnings after termination
8   from the amount she would have earned absent the employer's discriminatory conduct.  (ECF No.
9   54-1, Table calculating lost wages.)  Charging Party sought employment at Verizon Wireless,
10  where she worked from April 23, 2018 to November 3, 2018, as a full-time sales associate
11  making $11.00 per hour.  (ECF. No. 55 at ¶ 6.)  The undersigned finds the requested amount is
12  appropriate and recommends that Charging Party be awarded back pay in the amount of
13  $7,916.00. The undersigned also finds that Charging Party was reasonably diligent in seeking
14  alternative employment, especially in light of the pervasive symptoms of trauma Charging Party
15  experienced in the wake of the sexual assault and the fact that her car was repossessed after she
16  was fired from Elite.  (See ECF No. 55.)

17  Additionally, plaintiff requests an award of $2,487.90 in prejudgment interest.  (See ECF
18  No. 53-1 at 17.)  Plaintiff asserts, without support, that prejudgment interest is calculated at the
19  IRS interest rate for underpayment of taxes.  (Id.)  However, the Ninth Circuit has found that
20  prejudgment interest in Title VII back pay cases is appropriately determined by the rate set forth
21  in 28 U.S.C. § 1961(a).  See Price v. Stevedoring Servs. of Am., Inc., 697 F.3d 820, 837 (9th Cir.
22  2012).  Accordingly, the court awards prejudgment interest at the rate set forth in 28 U.S.C. §
23  1961 on the $7,916.00 backpay award.  Prejudgment interest is to be calculated from December
24  29, 2017, when Charging Party was fired from her job at Elite.  (See ECF No. 42 at ¶ 43.)

25          2.   Compensatory and Punitive Damages

26  Plaintiff seeks $100,000 in compensatory and punitive damages.  Under Title VII, a
27  plaintiff is entitled to compensatory damages for "emotional pain, suffering, inconvenience,
28  mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. §

1981a(b)(3). Plaintiff also seeks punitive damages, which may be recovered for cases involving intentional discrimination where the complaining party demonstrates that defendant engaged in egregious discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual. Kolstad v. American Dental Assoc., 527 U.S. 526 (1999); 42 U.S.C.1981 a(b)(1).

The Charging Party has provided a declaration detailing her suffering following the sexual assault by her Store Manager. (ECF No. 55 at ¶¶ 3-13, declaration describing the physical, emotional, and psychological effects of the sexual assault, and how it impacted her day to day life). Upon review of the record, the EEOC has demonstrated Charging Party's "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life" such that the undersigned recommends granting her request for compensatory damages. 42 U.S.C. § 1981a. The undersigned also finds that the Store Manager's pervasive sexual comments and subsequent sexual assault, combined with Elite's District Sales Manager's and CEO's failure to address the sexual harassment, and Charging Party's subsequent termination demonstrate amount to egregious discriminatory practices with malice (in the Store Manager's case) and reckless indifference (in the District Sales Manager's and CEO's case), and thus support an award of punitive damages. In sum, the undersigned recommends an award of $100,000 in compensatory and punitive damages.

### 3. Injunctive Relief

"If the court finds that [an employer] has intentionally engaged in…an unlawful employment practice charged in the complaint, the court may enjoin the [employer] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate." 42 U.S.C. § 2000e5(g)(1). Victims of employment discrimination are generally entitled to an injunction against future discrimination unless the employer proves it is unlikely to repeat the practice. EEOC v. Goodyear Aerospace Corp., 813 F.2d 1539, 1544 (9th Cir. 1987).

The EEOC alleges that Elite has not been dissolved, continues to hold its own funds in bank accounts, and that its executives may be involved in or consulting for retail locations that it previously operated. (ECF No. 42 at ¶¶ 7-10.) In an effort to prevent defendant from engaging in

further harassment and discrimination, the court recommends ordering injunctive relief as requested by EEOC: 1) enjoining Elite, and their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in sex discrimination against employees, and engaging in any other employment practices that discriminate on the basis of sex; and 2) ordering Elite to institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees, and that eradicate the effects of their past and present unlawful employment practices.

## **FINDINGS AND RECOMMENDATIONS**

Accordingly, it is HEREBY RECOMMENDED that:

1. Elite's motion for default judgment against defendant (ECF No. 53) be GRANTED;
2. Elite shall pay Charging Party back pay in the amount of $7,916.00 and prejudgment interest at the rate set forth in 28 U.S.C. § 1961.  Prejudgment interest is to be calculated from December 29, 2017.
3. Elite shall pay Charging Party $100,000 for emotional distress, pain, and suffering.
4. Elite shall make full payment of the amounts listed above no later than 30 days after entry of this judgment.
5. Elite, its officers, successors, assigns, and all persons in active concert or participation with them is hereby ENJOINED from engaging in sex discrimination against employees, and engaging in any other employment practice that discriminates on the basis of sex.
6. Elite is hereby ORDERED to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees which eradicate the effects of its past and present unlawful employment practices.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  March 4, 2024

_/s/ Carolyn K. Delaney_
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

21, EEOC.2187

13